UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

RONALD KINDE,

        Plaintiff,

v.

BAC HOME LOANS SERVICING, L.P. fka
COUNTRYWIDE HOME LOANS, MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC,
AMERICA'S WHOLESALE LENDER,

        Defendant(s).

Case No. 12-10474
District Judge Arthur J. Tarnow
Magistrate Judge Laurie J. Michelson

_____

### DEFENDANTS' ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

Defendants, Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP ("BANA"), improperly named as BAC Home Loans Servicing, LP fka Countrywide Home Loans; Mortgage Electronic Registration Systems, Inc. ("MERS"); and Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender ("CHL"), improperly named as America's Wholesale Lender, and collectively known as ("Defendants"), by and through their attorneys, Maddin, Hauser, Wartell, Roth & Heller, P.C., restate the allegations contained in the Complaint and answer the allegations as follows:

### I. INTRODUCTION

1.     This case is about the Kinde home whose mortgage security interest and assignment is in question as a result of a false and fraudulent mortgage assignment which cloud the title and superior property interests of Plaintiff.  Plaintiff performed a review of his property title history and discovered that illegal assignments of interests in the property and/or his note were performed in violation of Michigan law. Given the wrongful assignment of the rights in the property and the creation of a fictional note, Plaintiff fears his superior property interest in the home is now in jeopardy from Defendants and that he faces double-recovery on his promissory note.

ANSWER:        Defendants admit only that Plaintiff purports to allege a "false and fraudulent mortgage assignment which cloud the title and superior property interests of Plaintiff." Except as specifically admitted, Defendants deny as untrue the allegations in this paragraph.

## II.  PARTIES

2.      Plaintiff Ronald Kinde is an individual and consumer residing at 19460 McKinnen St., Roseville, Macomb County, Michigan 48066 ("subject property").

ANSWER:        Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

3.      Defendant BAC Home Loans Servicing, L.P. ("BAC") is a foreign corporation doing business in Macomb County.

ANSWER:        Defendants admit only that BANA does business in Macomb County.  Defendants deny as untrue all other allegations in this paragraph.

4.      Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a foreign corporation and a wholly-owned subsidiary of MERSCORP, Inc. with both providing services to financial institutions relative to residential mortgages including their tracking, registering and at times acting as mortgagee of record in the capacity of nominee or agent of their lender member clients.  MERS does not normally own any legal right or interest in the note associated with the property mortgage, and is therefore not a note holder.  Defendant MERS has acted in a mortgagee nominee capacity on behalf of its members and within the State of Michigan.

ANSWER:        Defendants admit only that MERS is a "foreign corporation and a wholly-owned subsidiary of MERSCORP, Inc. with both providing services to financial institutions relative to residential mortgages including their tracking, registering and at times acting as mortgagee of record in the capacity of nominee or agent of their lender member clients" and that "MERS has

acted in a mortgagee nominee capacity on behalf of its members and within the State of Michigan."

Except as specifically admitted, Defendants deny as untrue the allegations of this paragraph.

5.      America's Wholesale Lender ("AWL") is a mortgage lender and the original lender in the mortgage loan transaction giving rise to this Complaint.  AWL is a foreign corporation doing business in Macomb County.

ANSWER:      Defendants deny as untrue the allegations in this paragraph.

### III.  JURISDICTION

6.      Plaintiff incorporates by reference all other paragraphs of this Complaint.

ANSWER:      Defendants hereby incorporate by reference their answers to the preceding paragraphs of the Complaint.

7.      Jurisdiction and Venue are proper in this Circuit Court because the pertinent events took place here under the Michigan Foreclosure Statute MCL 600.3204 *et. seq.* and other statutes herein.

ANSWER:      Admitted.

8.      This is also a Quiet Title Action under MCL 600.2932 and MCR 3.411.

ANSWER:      Defendants admit only that Plaintiff purports to assert a "quiet title action under MCL 600.2932 and MCR 3.411."  Except as specifically admitted, Defendants deny as untrue the allegations in this paragraph.

### IV.  GENERAL ALLEGATIONS

9.      Plaintiff incorporates by reference all other paragraphs of this Complaint.

ANSWER:      Defendants hereby incorporate by reference their answers to the preceding paragraphs of the Complaint.

10.      Plaintiff is a Michigan homeowner who alleges that Defendants asserted invalid and voidable assignments against Plaintiff's home that now cloud the title and threaten Plaintiff's superior interest to the title to the subject property.

ANSWER:       Defendants admit only that Plaintiff is a Michigan homeowner who purports to allege "Defendants asserted invalid and voidable assignments against Plaintiff's home that now cloud the title and threaten Plaintiff's superior interest to the title to the subject property."   Except as specifically admitted, Defendants deny as untrue the allegations in this paragraph.

11.       Plaintiff and his wife of the time acquired a fee simple interest in the subject property by warranty deed on or about September 16, 2005.

ANSWER:       Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

12.       Plaintiff's wife quit claimed her interest to Plaintiff on or about May 6, 2005 (Exhibit 1).

ANSWER:   The exhibit referenced in this paragraph speaks for itself.   To the extent that the allegations are inconsistent with or mischaracterize the referenced exhibit, Defendants deny the allegations as untrue.

13.       Plaintiff executed a promissory note in favor of America's Wholesale Lender ("AWL" or "original lender") on or about January 20, 2006 ("Note" attached as Exhibit 2).

ANSWER:   The Note referenced in this paragraph speaks for itself.   To the extent that the allegations are inconsistent with or mischaracterize the referenced Note, Defendants deny the allegations as untrue.

14.       As security on the Note, Plaintiff executed a mortgage in favor of MERS as mortgagee "acting solely as a nominee for Lender and Lender's successors and assigns" on January 20, 2006 ("Mortgage" attached as Exhibit 3).

ANSWER:   The Mortgage referenced in this paragraph speaks for itself.   To the extent that the allegations are inconsistent with or mischaracterize the referenced Mortgage, Defendants deny the allegations as untrue.

15.      At an unknown time shortly after the execution of the Note and Mortgage, AWL sold the Note to a securitized Real Estate Mortgage Investment Conduit ("REMIC") trust (the "Trust") (Affidavit of expert Gregory Tyll at Paragraph 9, attached as Exhibit 4).

ANSWER: Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

16.      Upon information and belief, the precise REMIC Trust is titled Guaranteed REMIC Pass-Through Certificates Fannie Mae REMIC Trust 2006-1.[1]

ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

17.      MERS did not record an assignment of the mortgage to the REMIC Trust.

ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

18.      The REMIC Trust does not have an Agency Agreement with MERS.

ANSWER:  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

19.      When AWL sold the Note to the REMIC trust, MERS' rights were extinguished.

ANSWER:      Defendants deny as untrue the allegation in this paragraph.

20.      Further, when the Trust purchased the Note from AWL, the note was converted into a certificate for the benefit of certificate holders that funded the Trust satisfying the indebtedness referenced in the Note, extinguishing the security interest.

ANSWER:      Defendants deny as untrue the allegation in this paragraph.

---

[1]  The precise trust is difficult to determine, as the trust that receives the Note is based upon a number of factors, including date of execution, factor of risk and other factors not readily available to Plaintiff prior to discovery.

21.     The Pooling and Service Agreement (PSA) of the Trust is the trust document that dictates how a mortgage loan is purchased by the Trust.  The rights and ownership of the loan's payments are the property of the certificate holders in the Trust.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

22.     On May 19, 2009 and without rights to the mortgage or the note, MERS executed an Assignment of Mortgage transferring Plaintiff's mortgage to Defendant BAC (Assignment attached as Exhibit 5).

ANSWER:  The Assignment referenced in this paragraph speaks for itself. To the extent that the allegations are inconsistent with or mischaracterize the referenced Assignment, Defendants deny the allegations as untrue.

23.     MERS never had any ownership interest in Plaintiff's Promissory Note.

ANSWER:        Admitted.

24.     The Mortgage was extinguished prior to the Assignment of Mortgage by the satisfaction of the original Note.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

25.     An assignment of a mortgage without the underlying obligation is a "mere nullity" under Michigan law.[2]

ANSWER:        The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny as untrue the allegations in this paragraph.

26.     To date, Plaintiff's Promissory Note is held in a securitized Real Estate Mortgage Investment Conduit ("REMIC") Trust, created for the purpose of issuing mortgage-backed securities.

---

[2]  *Prime Financial Services v Vinton*, 279 Mich App 245, 761 NW2d 694, 703 (Mich App 2608); see also *Cummings v Continental Tool Corp*, 371 Mich 177, 183, 123 NW2d 165 (1963).

ANSWER:       Defendants deny as untrue the allegation in this paragraph.

27.     Plaintiff allegedly defaulted on the mortgage and attorneys Trott &Trott, P.C. ("Trott") began foreclosure proceedings on Plaintiff's home.  (Notices attached as Exhibit 6).

ANSWER:  The Notices referenced in this paragraph speak for themselves. To the extent that the allegations are inconsistent with or mischaracterize the referenced Notices, Defendants deny the allegations as untrue.

28.     At a Sherriff's sale on September 10, 2010, the subject property was foreclosed on and bought by Defendant BAC and a Sherriff's Deed was issued (Sherriff's Deed attached as Exhibit 7).

ANSWER:  The Sherriff's Deed referenced in this paragraph speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the referenced Sherriff's Deed, Defendants deny the allegations as untrue.

29.     Executed on January 20, 2011 and recorded on February 16, 2011, BAC then filed an affidavit expunging the Sherriff's Deed because the foreclosure sale was "inadvertently held" (Affidavit attached as Exhibit 8).

ANSWER:   The Affidavit referenced in this paragraph speaks for itself. To the extent that the allegations are inconsistent with or mischaracterize the referenced Affidavit, Defendants deny the allegations as untrue.

<u>V.  CAUSES OF ACTION</u>

<u>COUNT I—BREACH OF MORTGAGE CONTRACT</u>

30.     Plaintiff incorporates by reference all other paragraphs of this Complaint.

ANSWER:       Defendants hereby incorporate by reference their answers to the preceding paragraphs of this Complaint.

31.     The Mortgage signed by Plaintiff is a contract between Plaintiff, the Lender, MERS and their successors in interest.

ANSWER:        Defendants deny as untrue the allegations in this paragraph.

32.        "Under the settled law of this State, the mortgage and the note are to be construed together." *Guardian Depositors Corp .v Wagner*, 287 Mich 202, 208 (1939).

ANSWER:        The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny as untrue the allegations in this paragraph.

33.        Pursuant to paragraph 20 of the Mortgage and in keeping with Michigan Law, Defendant MERS, Lender and their successors in interest had a duty to pass the Mortgage "together with" the Note.

ANSWER:        The Mortgage referenced in this paragraph speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the referenced Mortgage, Defendants deny the allegations as untrue.

34.        AWL sold the Note to a REMIC Trust without selling it "together with" the security instrument (the Mortgage).

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

35.        Plaintiff was not notified of the Note's transfer to the Trust.

ANSWER:        Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

36.        MERS transferred the Mortgage to BAC without transferring the Note "together with" the Mortgage.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

37.        Plaintiff was not notified of the Mortgage's transfer to BAC.

ANSWER:        Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

38.     By failing to assign and construe the Mortgage and the Note together, MERS and AWL breached the mortgage contract.

**ANSWER:**     Defendants deny as untrue the allegation in this paragraph.

39.     AWL's breach occurred prior to any alleged default by Plaintiff.

**ANSWER:**     Defendants deny as untrue the allegation in this paragraph.

40.     MERS' breach occurred prior to any alleged default by Plaintiff.

**ANSWER:**     Defendants deny as untrue the allegation in this paragraph.

41.     An assignment of a mortgage without the underlying note is invalid and "a mere nullity" under Michigan law.[3]

**ANSWER:     The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny as untrue the allegations in this paragraph.**

42.     MERS' and AWL's failure to follow Michigan law and their failure to abide by terms of the Mortgage Agreement have caused a break in the chain of title.

**ANSWER:**     Defendants deny as untrue the allegation in this paragraph.

43.     Further, MERS and AWL's breach creates a "fictional note" in the hands of Defendant BAC, as MERS never had the Note to transfer to BAC with the Mortgage.

**ANSWER:**     Defendants deny as untrue the allegation in this paragraph.

44.     Due to Defendants' breach, Plaintiff was exposed to double liability on the promissory note both from the actual noteholder (the Trust) and the fictional note holder (BAC).

**ANSWER:**     Defendants deny as untrue the allegation in this paragraph.

---

[3] *Prime Financial Services v Vinton*, 279 Mich App 245, 761 NW2d 694, 703 (Mich App 2008); see also *Cummings v Continental Tool Corp*, 371 Mich 177, 183, 123 NW2d 165 (1963).

45.     Defendant BAC foreclosed on Plaintiff's property based upon the rights allegedly assigned by MERS and seeks to foreclose on Plaintiff's property again based upon the same assignment.

ANSWER:  Defendants admit only that BANA foreclosed on the property and that BANA had a right to foreclose due to an assignment of mortgage from MERS. Except as specifically admitted, Defendants deny as untrue the allegations in this paragraph.

46.     Defendant BAC could not legally take assignment of the mortgage from MERS without the underlying note, making the assignment a nullity.

ANSWER:     Defendants deny as untrue the allegation in this paragraph.

47.     MERS rights in the Mortgage ended upon the satisfaction of the indebtedness.

ANSWER:     Defendants deny as untrue the allegation in this paragraph.

48.     As a result of the breach of contract, Defendants have Caused there to be a cloud on the title to Plaintiff's property through an invalid assignment, have created a fictional note subjecting Plaintiff to double liability, have subjected Plaintiff to one wrongful foreclosure and sheriff's sale and now seek a second foreclosure.  Further, Plaintiff made payments on his mortgage note to an entity that did not have valid servicing rights under the original Note.

ANSWER:     Defendants deny as untrue the allegation in this paragraph.

COUNT II—QUIET TITLE

49.     Plaintiff incorporates by reference all other paragraphs of this Complaint.

ANSWER:     Defendants hereby incorporate by reference their answers to the preceding paragraphs of this Complaint.

50.     Plaintiff seeks to quiet title to his home and property rights and compels any Defendants alleging to hold a beneficial interest in the subject property to prove that they have such interest and have standing to foreclose, demonstrating with valid and clear legal title to Plaintiff's original Note and/or Mortgage.

ANSWER:        Defendants admit only that Plaintiff purports to seek to "quiet title to his home and property rights and compels any Defendants alleging to hold a beneficial interest in the subject property to prove that they have such interest and have standing to foreclose, demonstrating with valid and clear legal title to Plaintiff's original Note and/or Mortgage." Except as specifically admitted, Defendants deny as untrue the allegations in this paragraph.

51.     A quiet title action is the proper method by which to adjudicate disputed ownership of real property rights.[4]

ANSWER:        The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny as untrue the allegations in this paragraph.

52.     An assignment of a mortgage without the underlying note is a mere nullity under Michigan Law.

ANSWER:        The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny as untrue the allegations in this paragraph.

53.     Due to an invalid assignment, Defendants sought foreclosure by advertisement without having an interest in the indebtedness to the subject property.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

54.     Defendants are here with "unclean hands" and are equitably estopped in their efforts to foreclose and sell the Subject Property without a determination from this court that Defendants are the proper party to take such action.  The clean hands doctrine applies to quiet-title actions.[5]

---

[4]  See MCR 3.411(A); 4 Mich. Ct. Rules Prac., Text R 3.411 (5th ed.); *Chungag v Wells Fargo Bank, NA*; No. 10-448, 2011 WL 672229 (ED Mich February 17, 2011).

ANSWER:    Defendants deny as untrue the allegation in this paragraph.

55.    The assignment from MERS to BAC was an invalid assignment.

ANSWER:    Defendants deny as untrue the allegation in this paragraph.

56.    The note and mortgage was sold to the Trust which has no agency agreement with MERS.

ANSWER:    **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

57.    Defendant MERS does not have an Agency Agreement with the Trust and therefore could not act as nominee for the Trust.

ANSWER:    **The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny as untrue the allegations in this paragraph.**

58.    When the Note was transferred to a non-member of MERS, MFRS was required to execute an assignment of mortgage to that non-member (the Trust).

ANSWER:    **The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny as untrue the allegations in this paragraph.**

59.    Further, the PSA of the Trust required an assignment of mortgage to be recorded.

ANSWER:    **The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny as untrue the allegations in this paragraph.**

---

[5]  See *McFerren v B & B Inv Group*, 253 Mich App 517, 523; 655 NW2d 779, 783 (2002) citing *Mckay v Paltrier*, 170 Mich App 288; 427 NW2d 620 (1988).

60. Because the Mortgage did not pass together with the Note and because the Trust is not a member of the MERS system, the separation of the Note and Mortgage extinguished the Mortgage as a security on the Note.

ANSWER: Defendants deny as untrue the allegation in this paragraph.

61. Further, because the original Note was paid for by investors to the REMIC Trust and converted into a Certificate, the Mortgage again was extinguished because the underlying obligation was satisfied.

ANSWER: Defendants deny as untrue the allegation in this paragraph.

62. The Note, which was converted into a certificate, but which is still held by the Trust, is now an unsecured debt.

ANSWER: Defendants deny as untrue the allegation in this paragraph.

63. Since the Mortgage is extinguished and the Note is unsecured, Defendants' assertion of a mortgage security interest in the property is invalid and cloud the title to Plaintiff's property.

ANSWER: Defendants deny as untrue the allegation in this paragraph.

64. The invalid assignment, the wrongful foreclosure sale and the expungement further cloud the title to Plaintiff's property.

ANSWER: Defendants deny as untrue the allegation in this paragraph.

65. Plaintiff requests that this court quiet title to the subject property against Defendants and in favor of Plaintiff in fee simple.

ANSWER: Defendants admit only that Plaintiff purports to request that this court "quiet title to the subject property against Defendants and in favor of Plaintiff in fee simple." Except as specifically admitted, Defendants deny as untrue the allegations in this paragraph.

COUNT III—FRAUD IN THE ASSIGNMENT

66. Plaintiff incorporates by reference all other paragraphs of this Complaint.

ANSWER:    Defendants hereby incorporate by reference their answers to the preceding paragraphs of this Complaint.

67.    In the Assignment of Mortgage, Ellen Coon, signing as Vice President of MERS, made the statement that MERS was the "nominee for Lender and Lenders successors and/or assigns."  (See Exhibit 5).

ANSWER:  The Assignment of Mortgage referenced in this paragraph speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the referenced Assignment of Mortgage, Defendants deny the allegations as untrue.

68    The statements in the Assignment were made on or about May 19, 2009 and notarized by Terri Dornbush.  *Id.*

ANSWER:  The Assignment of Mortgage referenced in this paragraph speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the referenced Assignment of Mortgage, Defendants deny the allegations as untrue.

69.    MERS was not the nominee for the Trust nor did it have an Agency Agreement with the Trust.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

70.    However, in representing that it was the nominee for the Trust, MERS falsely claimed the right to transfer the Mortgage to BAC.

ANSWER:    Defendants deny as untrue the allegation in this paragraph.

71.    Further, the representation that MERS was transferring the Mortgage necessarily implies that it is transferring the Note together with the Mortgage.

ANSWER:        The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny as untrue the allegations in this paragraph.

72.    MERS never had an interest in the Note and the Note was still located in the REMIC Trust before and after the Assignment of Mortgage.[6] (See-Exhibit 4).

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

73.    In representing that it was transferring the Mortgage to BAC, MERS made the false representation that it was transferring the Note to BAC.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

74.    MERS' statement that it was the nominee for the Lender's successor was a material statement when made.

ANSWER:        Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph as the term "material statement" is not defined by Plaintiff.

75.    MERS' representation that it could assign the Mortgage and Note to BAC were material statements when made.

ANSWER:        Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph as the term "material statement" is not defined by Plaintiff.

76.    Defendants MERS and BAC, as sophisticated lending institutions advised by experienced real estate attorneys, knew that MERS did not have proper authority to assign the mortgage and did not have an ownership interest in the Note, or did so recklessly without regard to MERS' rights.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

---

[6] "MERS" status as an 'owner of an interest in the indebtedness' does not equate to an ownership interest in the note." *Residential Funding Co. LLC v. Saurman*, 490 Mich. 909, 805 N.W2d 183 (2011).

77.     Plaintiff relied on Defendants' representations by making mortgage payments to Defendant BAC, by attempting modification through BAC, by allowing foreclosure proceedings to move forward without prior challenge and in believing that the Note was still secured by the Mortgage.

**ANSWER:       Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.**

78.     As a result, title to Plaintiff's home is clouded, Plaintiff faces double-claims on the Note from the actual holder and the fictional holder, he has made payments to an unauthorized servicer of his loan, his home has undergone a foreclosure sale, he is facing a second foreclosure and he has suffered further damages including emotional distress, humiliation and indignity, attorneys fees and prejudice in these proceedings.

**ANSWER:       Defendants deny as untrue the allegation in this paragraph.**

COUNT IV—FRAUD IN THE SIGNATURES (ROBOSIGNING)

79.     Plaintiff incorporates by reference all other paragraphs of this Complaint.

**ANSWER:       Defendants hereby incorporate by reference their answers to the preceding paragraphs of this Complaint.**

80.     The Assignment of Mortgage is a signed and notarized document, signed by Ellen Coon as Vice President of MERS and Terri Dornbush as Notary Public (Exhibit 5).

**ANSWER:       The Assignment of Mortgage referenced in this paragraph speaks for itself. To the extent that the allegations are inconsistent with or mischaracterize the referenced Assignment of Mortgage, Defendants deny the allegations as untrue.**

81.     The Affidavit of Purchaser is signed by attorney Jennifer Hawthorne on behalf of BAC and notarized by Donna Williams (See Exhibit 6).

ANSWER:  The Affidavit of Purchaser referenced in this paragraph speaks for itself.  To the extent that the allegations are inconsistent with or mischaracterize the referenced Affidavit of Purchaser, Defendants deny the allegations as untrue.

82.    All statements contained in the Assignment of Mortgage and Affidavit of Purchaser are attributable to the signing party and are material statements.

ANSWER:    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph as the term "material statement" is not defined by Plaintiff.

83.    Further, the Notary Public assures that the signature was made in the presence of the Notary Public, that the signing party had signing authority to sign and that the signing party signed under oath, attesting to the truthfulness of the statements contained therein.

ANSWER:    The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny as untrue the allegations in this paragraph.

84.    Ellen Coon's signature is forged and signed by a different person (See other examples of Coon's signature as Exhibit 9).

ANSWER:    Defendants deny as untrue the allegation in this paragraph.

85.    Coon's signature was not affixed to the assignment in the presence of a notary public.

ANSWER:    Defendants deny as untrue the allegation in this paragraph.

86.    The signature of Terri Dornbush is forged, signed by a different person and does not match his notary application signature held by the Michigan Secretary of State.

ANSWER:    Defendants deny as untrue the allegation in this paragraph.

87.    Donna Williams' signature on the Affidavit of Purchaser is forged, not signed by Donna Williams, and does not match her signature on file with the Michigan Secretary of State.

ANSWER:    Defendants deny as untrue the allegation in this paragraph.

88.     Attorney Jennifer Hawthorne, if the signatory was present, knew that the person signing Ms. Williams' name was not Donna Williams.

ANSWER:      Defendants deny as untrue the allegation in this paragraph.

89.     Ms. Hawthorne's signature was not affixed in the presence of a notary public.

ANSWER:      Defendants deny as untrue the allegation in this paragraph.

90.     Defendants BAC and MERS systematically used "robosignors" to sign the documents in this case and in thousands of mortgage documents nationwide.   These actions have resulted in an investigation by a Congressional Oversight Panel, State Attorneys Generals and numerous class action lawsuits around the country.

ANSWER:      Defendants deny as untrue the allegation in this paragraph.

91.     The attestations contained in the Assignment of Mortgage and Affidavit of Purchaser were false.

ANSWER:      Defendants deny as untrue the allegation in this paragraph.

92.     Defendants MERS and BAC knew that the attestations were false because of their systematic use of robosignors to forge documents.

ANSWER:      Defendants deny as untrue the allegation in this paragraph.

93.     Defendants MERS and BAC did not perform their due diligence in investigating the rights of MERS and BAC in Plaintiff's Mortgage and recklessly proceeded to transfer the Mortgage and Note.

ANSWER:      Defendants deny as untrue the allegation in this paragraph.

94.     A proper investigation by Defendants' attorneys would have uncovered the discrepancies and the Trust's ownership of the Note.

ANSWER:      Defendants deny as untrue the allegation in this paragraph.

95.     Instead of performing a proper investigation, Defendants MERS and BAC used robosignors to push through documents in a hurried attempt to take away Plaintiff's home.

ANSWER:      Defendants deny as untrue the allegation in this paragraph.

96.     Plaintiff relied on the representations made, relying on authority of a supposed Vice President of MERS, the integrity of Defendants' attorneys and the integrity of the notary public involved in justifiably believing that Defendants' properly held Plaintiff's Mortgage and Note.

ANSWER:      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

97.     Plaintiff was never told about the involvement of a REMIC Trust.

ANSWER:      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

98.     As a result, title to Plaintiff's home is clouded, Plaintiff faces double-claims on the Note from the actual holder and the fictional holder, he has made payments to an unauthorized servicer of his loan, his home has undergone a foreclosure sale, he is facing a second foreclosure and he has suffered further damages including emotional distress, humiliation and indignity, attorneys fees and prejudice in these proceedings.

ANSWER:      Defendants deny as untrue the allegation in this paragraph.

COUNT V—WRONGFUL FORECLOSURE

99.     Plaintiff incorporates by reference all other paragraphs of this Complaint.

ANSWER:      Defendants hereby incorporate by reference their answers to the preceding paragraphs of this Complaint.

100.    In order to foreclose by advertisement, the foreclosing party must either own the indebtedness (the Note), an interest in the indebtedness or be the servicer of the loan.  See MCL 600.3204(1)(d).

ANSWER:        The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny as untrue the allegations in this paragraph.

101.    Neither MERS nor BAC ever owned the Note or an interest in the Note.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

102.    Neither MERS nor BAC was the servicer of Plaintiff's mortgage.[7]

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

103.    The transfer by MERS to BAC was invalid because it failed to assign the Note, the Mortgage had been extinguished and BAC acquired nothing.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

104.    As the note was sold to the Trust which has no agency agreement with MERS, Defendant MERS could not claim to have ever been a mortgagee of record in the capacity of nominee, nor could it claim the right to transfer the mortgage as nominee, since such a right under agency law must be put forth in a written agreement.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

105.    The PSA of the Trust in this case dictates the use and ownership of the subject mortgage and note.

ANSWER:        Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

106.    "If  the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage."  See MCL 600.3204(3).

---

[7]  A "servicer" under the foreclosure by advertisement statute is the servicer of the mortgage, not the note. See MCL - 600.3205.

ANSWER:       The allegations in this paragraph state a legal conclusion to which no response is required. To the extent a response is required, Defendants deny as untrue the allegations in this paragraph.

107.   Defendant BAC never acquired the mortgage in the chain of title and so its foreclosure, violated Section 3204(3).

ANSWER:       Defendants deny as untrue the allegation in this paragraph.

108.   A record chain of title showing the intermediate owners of the mortgage was never created.

ANSWER:       Defendants deny as untrue the allegation in this paragraph.

109.   As a result of Defendants' wrongful and concerted conduct, Plaintiff has undergone a foreclosure, is facing a second foreclosure, has not been properly advised of his rights by Defendants, title to his property is clouded and Plaintiff has endured emotional and special damages.

ANSWER:       Defendants deny as untrue the allegation in this paragraph.

COUNT VI—DEFENDANTS ARE NOT THE TRUE PARTIES IN INTEREST

110.   Plaintiff incorporates by reference all other paragraphs of this Complaint.

ANSWER:       Defendants hereby incorporate by reference their answers to the preceding paragraphs of this Complaint.

111.   Defendants are not holders in due course of the original Note or Mortgage.

ANSWER:       Defendants deny as untrue the allegation in this paragraph.

112.   Because Defendants are not holders in due course, they do not have the legal standing to enforce the original Note and Mortgage

ANSWER:       Defendants deny as untrue the allegation in this paragraph.

113.   Defendants who are not entitled to enforce the original Note and Mortgage will receive no benefit from the foreclosure of Plaintiff's home.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

114.    Defendants have no direct claim to the proceeds due on the note as the note is held in a securitized trust

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

115.    Because Defendants do not have the legal right to enforce the original Note and Mortgages and will receive no benefit from the foreclosure of Plaintiff's home, Defendants are not the real parties in interest entitled to foreclose Plaintiff's home.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

116.    Because Defendants falsely asserted, at different times, that they were parties in interest to the note, Plaintiff has lost title to her home and incurred damages.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

COUNT VII—SLANDER OF TITLE

117.    Plaintiff incorporates by reference all other paragraphs of this Complaint.

ANSWER:        Defendants hereby incorporate by reference their answers to the preceding paragraphs of this Complaint.

118.    Michigan recognizes slander of title claims both in statute (MCL 565.108) and at common law, and Plaintiff brings this cause of action under both theories.

ANSWER:        The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny as untrue the allegations in this paragraph.

119.    In regards to the subject property still held by Plaintiff, Defendant BAC published or caused to be published Notices of Foreclosure, an Affidavit of Notice, an Assignment of Mortgage, a Sherriff's Deed on the Foreclosure Sale and Affidavit of Purchaser.

ANSWER:        Defendants admit only that "BAC published or caused to be published Notice of Foreclosure, an Affidavit of Notice, an Assignment of Mortgage, a Sherriff's Deed on the Foreclosure Sale and Affidavit of Purchaser."  Except as specifically admitted, Defendants deny as untrue the allegations in this paragraph.

120.    Defendant BAC published said documents with knowledge that it was not a proper party to foreclose by advertisement and that statements contained in the documents were false.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

121.     Defendant BAC knew that it had not received a proper assignment of mortgage and that its foreclosure by advertisement would violate MCL 600.3204(3).

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

122.    Defendant BAC knew that it did not receive the Note in the assignment of mortgage from MERS and that the assignment was not valid.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

123.    Defendants knew that they did not hold Plaintiff's note or any interest in the indebtedness to the subject property.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

124.    Defendants knew that they were not the proper servicers of the mortgage or owners of an interest in the indebtedness, but proceeded maliciously to dispossess Plaintiff of his home.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

125.    Defendants published the false documents in order to take advantage of Michigan's foreclosure by advertisement provisions and avoid judicial oversight.

ANSWER:        Defendants deny as untrue the allegation in this paragraph.

126.    As a result of Defendants' slander of the title to his home, Plaintiff has suffered special damages, including:

a.      Attorney fees.

b.      Impairment of vendibility of her property.

c.      Loss of interest in the subject property.

**ANSWER:**      **Defendants deny as untrue the allegation in this paragraph, including all subparts.**

127.    As a result of Defendants' slander on the title to her home, Plaintiff has suffered exemplary

damages, including:

d.      Humiliation and sense of outrage.

e.      Indignity resulting from the foreclosure of her home.

f.      Emotional distress.

**ANSWER:**      **Defendants deny as untrue the allegation in this paragraph, including all subparts.**

## AFFIRMATIVE DEFENSES

1.      All claims against MERS should be dismissed as claims against an inappropriate party.

2.      Plaintiff fails to state a claim upon which relief can be granted.

3.      Plaintiff's claims are barred to the extent he consented to the terms of the Mortgage and Note at issue in this lawsuit which, among other things, require monthly instalment payments and provide for acceleration of the debt and foreclosure upon non-payment.

4.      Plaintiff's claims are barred to the extent he ratified the terms of the Mortgage and Note at issue in this lawsuit by, among other things, making the required monthly payments.

5.      Plaintiff lacks standing, including but not limited to, standing to challenge the assignment of Note and Mortgage.

6.      Plaintiff's claims are barred by his failure to mitigate damages, including by failure to make regularly mortgage payments.

7.      Plaintiff's claims may be barred by the doctrine of laches.

8.      Plaintiff's claims are barred by his prior material breach of the Mortgage and Note at issue.

9.      Plaintiff's claims may be barred by the doctrine of unclean hands, including by failure to make regular mortgage payments.

10.     Plaintiff's claims may be barred by the doctrine of waiver, including by failure to make regular mortgage payments.

11.     Plaintiff's claims may be barred, in whole or in part, by his own wrongful conduct, including by failure to make regular mortgage payments.

12.     Plaintiff's claims may be barred, in whole or in part, to the extent he has been unjustly enriched and failed to tender back loan proceeds.

13.     Defendants reserve the right to amend their affirmative defenses as discovery in this matter progresses.

WHEREFORE, Defendants request that this Court enter a Judgment in their favor and against Plaintiff, dismiss Plaintiff's Complaint in its entirety and with prejudice, and award Defendants their costs and attorneys fees incurred in responding to this action. Defendants further request all other relief that this Court deems just and proper.

Respectfully submitted,

MADDIN, HAUSER, WARTELL, ROTH & HELLER, PC

/s/ David G. Michael
Martin S. Frenkel (P49283)
David G. Michael (P68508)
28400 Northwestern Highway, Third Floor
Southfield, MI  48034-1839
(248) 354-4030
dmichael@maddinhauser.com
Dated:  February 10, 2012          Attorneys for Defendants

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 10, 2012, I electronically filed the foregoing paper using the ECF system, which sent notice of filing to David G. Michael and Brian P. Parker.

Respectfully submitted,

MADDIN, HAUSER, WARTELL, ROTH & HELLER, PC

<u>/s/ David G. Michael</u>
Martin S. Frenkel (P49283)
David G. Michael (P68508)
28400 Northwestern Highway, Third Floor
Southfield, MI  48034-1839
(248) 354-4030
dmichael@maddinhauser.com
Dated:  February 10, 2012                Attorneys for Defendants